1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KEITH HUTCHINSON,                              CV F 02 6215 OWW SMS P

          Plaintiff,

                                FINDINGS AND RECOMMENDATIONS
   v.                              RECOMMENDING SUMMARY JUDGMENT
                                 MOTION BE GRANTED (Doc. 56 & 57)

MR. ALAMIEDA, et al.,

          Defendants.

_____/

      Keith Hutchinson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A. PROCEDURAL HISTORY:**

      Plaintiff filed his Complaint on October 2, 2002.  The Court screened Plaintiff's Complaint on November 26, 2002, and dismissed his Complaint with leave to amend because Plaintiff did not state a cognizable claim against Defendants Mr. Alamieda, Director of California Department of Corrections (CDC) and Dr. Steinberg, Deputy Director of Health Services at CDC.  Specifically, the Court ordered Plaintiff to either file an Amended Complaint to cure deficiencies in his Complaint, or notify the Court to proceed only on those claims determined to be cognizable by the Court.  Plaintiff chose not to file an Amended Complaint, and

1

instead, on January 2, 2003, he notified the Court he intended to proceed on the cognizable

Eighth Amendment and Americans with Disabilities Act (ADA) claims against Defendants

Pendleton, Chief Medical Officer (CMO) at Corcoran State Prison (CSP), Ortiz, Faculty Captain

at CSP,  Stockman, Chief Deputy Warden at CSP, Cornforth, Physician at San Joaquin

Community Hospital (SJCH) , Pineda, Physician at SJCH, Friedman, Physician and Pain

Specialist at CSP, Bhatt, Chief Physician and Surgeon at CSP, and Yee, Healthcare Manager at

CSP.

The Court issued Findings and Recommendations on May 19, 2003, and confirmed that

Plaintiff's original Complaint contained cognizable claims against Defendants Dr. Pendleton,

Mr. Ortiz, Mr. Stockman, Dr. Cornforth, Dr. Pineda, Dr. Friedman, Dr. Bhatt, and Dr. Yee, but

not Mr. Alamieda and Dr. Steinberg.  By order of July 11, 2004, the Court directed the U.S.

Marshal to serve the original Complaint on Defendants Dr. Pendleton, Mr. Ortiz, Mr. Stockman,

Dr. Cornforth, Dr. Pineda, Dr. Friedman, Dr. Bhatt, and Dr. Yee.

On September 18, 2003, Defendant Dr. Pineda filed a Motion for a More Definite

Statement because he could not ascertain the claims Plaintiff brought against him, and could not

frame a proper response.  Defendants filed a Motion to Dismiss on September 22, 2003, claiming

that Plaintiff failed to exhaust administrative remedies and failed to state a cognizable claim

against each Defendant.  Plaintiff did not submit an Opposition to Defendants' Motions.

The Court issued Findings and Recommendations on May 28, 2004, and denied

Defendant Dr. Pineda's Motion for a More Definite Statement.  The Court found that Plaintiff's

Complaint was not so vague and ambiguous that Defendant Dr. Pineda could not frame a

responsive pleading.  The Court also denied Defendants' Motion to Dismiss for failure to exhaust

administrative remedies, finding Plaintiff had exhausted his administrative remedies.  Moreover,

the Court denied Defendants Dr. Pendleton, Mr. Ortiz, Mr. Stockman, Dr. Cornforth, Dr. Pineda,

Dr. Friedman, Dr. Bhatt, and Dr. Yee's Motion to Dismiss for failure to state a claim.

On August 2, 2004, the District Court adopted the Court's Findings and

Recommendations.  However, the District Court granted Defendants Mr. Ortiz and

Mr. Stockman's Motion to Dismiss for failure to state a claim, and gave Plaintiff thirty (30) days

1   to file an Amended Complaint to cure those deficiencies.  Plaintiff never filed a response.  On

2   September 22, 2004, the District Court ordered Plaintiff to show cause why the Complaint should

3   not be dismissed for failing to comply with the District Court's order in filing an Amended

4   Complaint.  Plaintiff filed an Answer to the District Courts order on October 4, 2004, and

5   indicated he could find no information to cure the defect and would not file an Amended

6   Complaint.

7       The Court found Plaintiff's Answer addressed why he did not comply with the Order

8   dismissing with leave to amend on January 13, 2005, however, the Answer did not inform the

9   Court how to proceed at this stage.  The Court granted Plaintiff one final allotment of time to

10  either submit an Amended Complaint curing the deficiencies of the Complaint, or inform the

11  Court that he did not intend to submit an Amended Complaint but wished to proceed against

12  those individuals whom the Court found the Complaint stated a claim for relief.  On February 22,

13  2005, Plaintiff filed his intent to proceed on his original Complaint against only those Defendants

14  the Court found claims cognizable.

15      On April 4, 2005, the Court found that Defendants Dr. Pendleton, Dr. Cornforth,

16  Dr. Pineda, Dr. Friedman, Dr. Bhatt, and Dr. Yee did not file a responsive pleading against

17  Plaintiff, and ordered Defendants to respond to Plaintiff's Complaint within thirty (30) days.  On

18  April 6, 2005, Defendants submitted an Answer to Plaintiff's Complaint denying each claim for

19  relief, and demanding that this case be tried by a jury.  Pending before the Court is Defendants'

20  Motion for Summary Judgment and their Statement of Undisputed Facts, both filed on

21  June 15, 2006.  Plaintiff did not file an Opposition to Defendant's Motion for Summary

22  Judgment.

23  **B. SUMMARY JUDGMENT STANDARD:**

24      Summary judgment is appropriate when it is demonstrated that there exists no genuine

25  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

26  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

27          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
28          pleadings, depositions, answers to interrogatories, and admissions

> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery

and upon motion, against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party

to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## C. SUMMARY OF COMPLAINT:

In the Complaint, Plaintiff names several prison officials who are employed at CSP as

Defendants. Plaintiff states sometime in March 2000, he slipped and fell on eggs that were left

on the floor in the dining hall at CSP. As a result Plaintiff alleges he injured his left hand, left

arm, left shoulder, and back. After the fall, Plaintiff went to the emergency room at CSP to be

examined by a physician. Plaintiff states the physician informed him that his left hand was not

broken, and the swelling should decrease in the next few days. According to Plaintiff, the

physician said that an appointment with Dr. Embree, Neurologist at CSP, would be scheduled for

the following week.

Dr. Embree examined Plaintiff's left hand the next week. After the examination,

Dr. Embree called Mr. Amador, a physical therapist at CSP. Dr. Embree and Mr. Amador

discussed Plaintiff's hand and determined he appeared to have Reflex Sympathetic Dystrophy

1 Syndrome (RSDS).  Dr. Embree and Mr. Amador both thought physical therapy would be
2 necessary for Plaintiff's hand to recover.  Plaintiff alleges the physical therapy treatment did not
3 cure his RSDS.  Furthermore, Plaintiff claims he was placed on various pain medications that did
4 little to ease his pain.

5 According to Plaintiff, Mr. Amador informed him that the physical therapy was not
6 helping his hand condition, and that he was going to recommend Dr. Embree perform surgery.
7 Plaintiff alleged after the physical therapy commenced, he never received follow up care.  Thus,
8 Plaintiff submitted several health care service requests (HCSR) to the CDC requesting to be seen
9 by Dr. Embree.  Plaintiff finally saw Dr. Embree in July 2000, and claims Dr. Embree informed
10 him that surgery for his hand condition was necessary.  Dr. Embree wrote a recommendation for
11 Plaintiff to be transferred to California Men's Colony for neurological treatment.

12 Over a period of fourteen months, Plaintiff claims he never received surgery for his hand,
13 and was experiencing severe pain.  Plaintiff submitted two 602 appeals requesting surgery, and
14 he alleges that Dr. Hoffman, Dr. Thirakomen, Defendant Dr. Yee, and Defendant Dr. Pendleton
15 each gave conflicting responses to his appeals.  Plaintiff contends that the conflicting responses
16 were an inexcusable delay in giving him proper neurological treatment.  Furthermore, Plaintiff
17 alleges that Defendants delays have caused him to obtain an acute case of RSDS, making his
18 RSDS not fully recoverable in the future.

19 Plaintiff eventually had surgery for his RSDS after having the condition for over
20 seventeen months.  Plaintiff alleges he was informed by a physician who performed his first
21 surgery that he would need at least three to four more surgeries to correct his condition, and if the
22 surgeries did not work, something else could be tried.  Plaintiff claims after he received his initial
23 surgery he submitted a request for another surgery, and Defendant Dr. Pendleton denied his
24 request as not being medically necessary because it would only provide temporary relief.

25 Plaintiff saw Defendant Dr. Pineda and he recommended that Plaintiff have surgery to
26 avoid losing his hand.  Plaintiff contends that none of his questions about the surgery curing
27 RSDS were answered by Defendant Dr. Pineda.  However, Plaintiff states that he agreed to
28 proceed with the surgery for fear of losing his hand.

On January 24, 2002, Plaintiff went in for a second surgical procedure.  Prior to the second procedure, Plaintiff claims he complained for over an hour about the severe burning in his hand, and dry cracked skin that was slightly bleeding.  Plaintiff saw treating physician Defendant Dr. Cornforth.  Plaintiff alleges that Defendant Dr. Cornforth informed him that there would be no surgery because his hand condition had worsened.  According to Plaintiff, Defendant Dr. Cornforth thought that his first surgery was performed too late to treat his hand condition and there was nothing he could do to cure his condition.

Plaintiff claims he was laid off his job after January 2002 because of his hand condition.  Plaintiff saw Dr. Vara, a neurologist at CSP, and he scheduled Plaintiff for an MRI, physical therapy treatment, and to see Defendant Dr. Friedman.  Plaintiff contends that his physical therapy treatment, which ended in April 2002, did not help his hand condition.  Plaintiff also claims he had many scheduled appointments with Defendant Dr. Friedman that were cancelled for no reason.

Plaintiff finally went to see Defendant Dr. Friedman, and he informed Plaintiff that his condition was misdiagnosed because he did not have RSDS.  Plaintiff claims he asked Defendant Dr. Friedman about ways to cure his pain.  Plaintiff alleges Defendant Dr. Friedman said that he should cease taking pain medication and instead conduct self exercises to control the pain.  A few months later, Dr. Friedman discontinued Plaintiff's pain medication.

In September 2002, Plaintiff saw Defendant Dr. Bhatt because he had continued pain and wished to renew his pain medication.  During the visit, Plaintiff alleges that Defendant Dr. Bhatt found he had RSDS, and that it was likely his hand condition would never heal. Defendant Dr. Bhatt referred Plaintiff to see Defendant Dr. Friedman, however, he did not renew Plaintiff's pain medication prescription.  Plaintiff also alleges that his scheduled 45-day follow up appointment with Defendant Dr. Friedman was cancelled.

Plaintiff claims on four separate occasions he was taken to a Unit Classification Committee (UCC) hearing between August 2000 to May 2002.  At the UCC hearings, Plaintiff addressed his need for a transfer to another prison where he might receive adequate medical treatment for his RSDS.  Plaintiff alleges that when he raised his medical concerns at the

hearings, they were ignored and overlooked, even though he thought there was sufficient documentation for a medical transfer.

According to Plaintiff, Defendant Dr. Yee delayed his medical appeal when he denied his inmate grievances which complained that Plaintiff 's questions regarding his condition were not answered.  Plaintiff contends Defendant Dr. Yee failed to adequately supervise, train his staff, and place procedures in order for Plaintiff to receive adequate medical care.

Plaintiff also contends Defendant Dr. Pendleton, was also made aware of Plaintiff medical condition and lack of treatment through the CDC grievance process.  Plaintiff claims that Defendant Dr. Pendleton failed to adequately supervise, train staff, and place procedures in order for Plaintiff to receive appropriate medical care.  Finally, Plaintiff contends that Defendant Dr. Bhatt failed to adequately supervise, train staff, and place procedures so that plaintiff would receive adequate medical care.

Plaintiff argues that Defendants Dr. Pendleton, Dr. Cornforth, Dr. Pineda, Dr. Friedman, Dr. Bhatt, and Dr. Yee, each violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs by failing to provide adequate care and treatment for his RSDS.  Plaintiff alleges that Defendants conduct caused him severe and unnecessary pain, mental stress, and injury.  Furthermore, Plaintiff claims that Defendants acts have caused him to have a disability, which has resulted in a denial of access to prison programs, services, and activities in violation of the Americans with Disabilities Act (§ 504).  Finally, Plaintiff alleges he is unable to participate in prison programs including vocation, work credits, recreation, dining hall, yard time, and visiting.  Plaintiff prays for the court to issue an injunction compelling Defendants to provide Plaintiff with adequate medical treatment and monetary damages, among other things.

**D.  UNDISPUTED FACTS**[1]

1.      Plaintiff arrived at CSP on November 3, 1997. (Def.'s Statement of Undisputed Facts Ex.

---

[1]Plaintiff did not file an Opposition setting forth his Statement of Undisputed facts.  Thus, the Court compiled the list of undisputed facts from Defendants list of undisputed facts and the Plaintiff's verified Complaint. Verified pleading constitutes opposing affidavit for purposes of summary judgment rule.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

A, p. 3.)

2.   At all times relevant to this suit, Defendant Dr. Pendleton was the CMO at CSP.  (Pl.'s Dep. 34:23.; Pl.'s Compl. 4:18, 28, 8:9-10, 13-14, 9:15-17.)

3.   Doctor Pendleton was not one of Plaintiff's treating physicians.  (Pl.'s Dep. 33:7-8.)

4.   Defendant Dr. Yee was not one of Plaintiff's treating physicians.  (Pl.'s Dep. 69:23-25.)

5.   Defendant Dr. Yee responded to a grievance filed by Plaintiff.  (Id.)

6.   Plaintiff's grievance concerned a missed medical appointment on October 26, 2000. (Pl.'s Dep. 71:2-73:3.)

7.   After reviewing Plaintiff's grievance, Defendant Dr. Yee had his appointment rescheduled.  (Pl.'s Dep. 72:3-73:7.)

8.   Defendant Dr. Pineda is a physician at San Joaquin Community Hospital.  (Pl.'s Dep. 47:21-22; Compl. 5:1-2.)

9.   Defendant Dr. Cornforth is a physician at San Joaquin Community Hospital.  (Pl.'s Dep. 47:21-22.)

10.   At all times relevant to this suit, Defendant Dr. Friedman was a pain specialist at CSP. (Pl. 's Dep. 37:3-7; Compl. 6:2-3.)

11.   Defendant Dr. Bhatt is a physician at CSP.  (Pl.'s Dep. 65:18; Compl. 9:21-26.)

12.   On March 16, 2000, Plaintiff slipped on some eggs while working in the kitchen at CSP, and injured his left arm as he fell to the ground (Pl.'s Dep. 8:17-25; Def.'s Statement of Undisputed Facts Ex. C 1-5; Compl. 2:12-16.)

13.   Plaintiff was treated in the Emergency Room at CSP.  (Pl.'s Compl. 2:17-19.)  Plaintiff was prescribed medication and advised to return on March 21, 2000. (Def.'s Statement of Undisputed Facts Ex. C 1, 3, 5; Pl.'s Compl. 2:22-24.)

14.   On March 21, 2000, Plaintiff was examined by Dr. Embree.  (Def.'s Statement of Undisputed Facts Ex. C  5, 7-8; Pl.'s Dep. 13:8-15; Compl. 2:25-3:2.)  Dr. Embree prescribed medication and ordered a course of physical therapy.  (Id.)

15.   Plaintiff's physical therapy regimen included twice a month consultations, transcutaneous electrical stimulation (TENS), and hot and cold packs.  (Def.'s Statement of Undisputed

1   Facts Ex. C  8, 10, 12.)

2   16.   Dr. Embree provided Plaintiff with a temporary diagnosis of Reflex Sympathetic

3        Dystrophy Syndrome (RSDS).  (Def.'s Statement of Undisputed Facts Ex. C  8; Compl.

4        3:1-2.)

5   17.   The prognosis for recovery varies significantly.  (Def.'s Statement of Undisputed Facts

6        Ex. F. ¶ 9.)  Certain individuals will experience spontaneous remission from these

7        symptoms.  (Id.)  Others will have unremitting pain despite excellent treatment.  (Id.)

8   18.   On May 3, 2000, an examination revealed that Plaintiff's swelling and skin changes had

9        decreased and his range of motion had improved.  (Def.'s Statement of Undisputed Facts

10       Ex. C 15.)  Plaintiff continued to suffer from pain in his left upper extremity.  (Id.)  The

11       frequency of his physical therapy sessions were increased to once a week.  (Id.)

12  19.   On June 1, 2000, Plaintiff was discharged from physical therapy after the benefits

13       provided by these sessions plateaued.  (Def.'s Statement of Undisputed Facts Ex. C  20.)

14  20.   On June 1, 2002, it was observed by Dr Embree that Plaintiff became emotional and

15       anxious regarding his medical condition.  (Def.'s Statement of Undisputed Facts Ex. C

16       20.)

17  21.   On June 29, 2000, Plaintiff was examined by Dr. Embree.  (Def.'s Statement of

18       Undisputed Facts Ex. C 24.)  Although he continued to experience pain, tenderness, and

19       skin changes in his left upper extremity, Dr. Embree observed that Plaintiff experienced

20       intermittent periods of relief using Neurontin.  (Id.)  Therefore, Dr. Embree increased

21       Plaintiff's dosage of Neurontin and advised him to return in two to three weeks.  (Id.)

22  22.   In July 2000, Plaintiff's treating physician, Dr. Embree, passed away.  (Pl.'s Dep. 15:9-

23       10.)

24  23.   For the next several months, Plaintiff continued to be examined by the medical staff at

25       CSP, who treated his pain with medication.  (Def.'s Statement of Undisputed Facts Ex. C

26       25-29.)  Darvocet and Elavil were added to this regimen on August 4, 2000.  (Def.'s

27       Statement of Undisputed Facts Ex. C  26.)

28  24.   Plaintiff was examined by Defendant Dr. Pineda at San Joaquin Community Hospital on

1   January 2, 2001.  (Def's Statement of Undisputed Facts Ex. C 36, 38-39.)  Defendant Dr.

2   Pineda recommended continued medication, and an electrical study of the left hand.  (Id.)

3   Plaintiff was encouraged to continue using his left hand as physical activity is a primary

4   treatment for RSDS.  (Id.)

5   25.   On January 2, 2001, Defendant Dr. Pineda first approached the possibility of performing

6        a nerve block to help alleviate Plaintiff's symptoms.  (Def.'s Statement of Undisputed

7        Facts Ex. C 39.)  Plaintiff was not interested in this course of treatment.  (Id.)  Defendant

8        Dr. Pineda indicated Plaintiff should reconsider the procedure if the results of the

9        electrical studies were negative.  (Id.)

10  26.   In February 2001, an electrical study was performed to rule out compressive neuropathy.

11        Plaintiff's results were within normal limits.  (Def.'s Statement of Undisputed Facts Ex.

12        C  45.)

13  27.   Plaintiff was reexamined by Defendant Dr. Pineda on May 29, 2001.  He recommended

14        treating Plaintiff's symptoms through increased medication and continued use of the

15        extremity.  (Def.'s Statement of Undisputed Facts Ex. C  45.)

16  28.   At this time, Defendant Dr. Pineda advised Plaintiff there is no "quick fix or absolute

17        cure" for RSDS.  (Def.'s Statement of Undisputed Facts Ex. C 45.)

18  29.   Once again, Defendant Dr. Pineda advised Plaintiff to consider a sympathetic nerve

19        block.  (Def.'s Statement of Undisputed Facts Ex. C 45.)

20  30.   On August 17, 2001, an epidural steroid injection and nerve block was performed by

21        Defendant Dr. Cornforth at San Joaquin Community Hospital.  (Def.'s Statement of

22        Undisputed Facts Ex. C 54-57.)

23  31.   On August 17, 2001, Defendant Dr. Cornforth recommended two additional epidural

24        injections which were scheduled for September 13 and 20, 2001. (Def.'s Statement of

25        Undisputed Facts Ex. F. ¶ 16)

26  32.   On August 17, 2001, the injection was performed by Defendant Dr. Cornforth without

27        complication. (Def.'s Statement of Undisputed Facts Ex. F. ¶ 16.)

28  33.   After complaining of increased pain and swelling Plaintiff was examined by Dr Friedman

and medicated for these symptoms on August 24, 2001.  (Def.'s Statement of Undisputed Facts Ex. C 58.)

34.    On October 24, 2001, Plaintiff was reexamined by Defendant Dr. Pineda.  (Def.'s Statement of Undisputed Facts Ex. C 61.) Based upon these facts, Defendant Dr. Pineda recommended completing the series of injections.  (Def.'s Statement of Undisputed Facts Ex. C 61.)  He also recommended treating Plaintiff with medication and physical therapy. (Id.)

35.    Defendant Dr. Cornforth did not control the date of Plaintiff's injection.  (Pl.'s Dep. 47:20-48:3-5.)

36.    On October 24, 2001, Defendant Dr. Pineda concluded that Plaintiff did not require any further neurological consultations.  (Def.'s Statement of Undisputed Facts Ex. C 61.)

37.    For the next several months, Plaintiff was examined by the medical staff at CSP and his symptoms were treated with medication. (Def.'s Statement of Undisputed Facts Ex. C 62-70)

38.    From February to April 2002, Plaintiff participated in a course of physical therapy at CSP.  These treatments included therapy twice a week, whirlpool treatments, warm water soaks, and TENS.  (Def.'s Statement of Undisputed Facts Ex. C 71-74; Compl. 5:28-6:3.)

39.    On May 30, 2002, Plaintiff was examined by Defendant Dr. Friedman. (Def.'s Statement of Undisputed Facts Ex. C 83.) After reviewing his medical history, Defendant Dr. Friedman observed that Plaintiff started taking Darvocet, then Elavil, and increased dosages of Neurontin without experiencing significant relief.  (Def.'s Statement of Undisputed Facts Ex. C 83; Compl. 6:7-15.) Moreover, Plaintiff's nerve conduction studies and X-rays were negative, while an MRI performed in February 2002 revealed a mild central bulge.  (Id.)

40.    Defendant Dr. Friedman noted that Plaintiff has been diagnosed with major depression in 1999.  (Def.'s Statement of Undisputed Facts Ex. C 83.)  Furthermore, he had recently been placed on Prozac after being diagnosed with post traumatic stress disorder.  (Id.)

41.    Based upon these observations, Defendant Dr. Friedman concluded that Plaintiff was not

suffering from RSDS. ( Compl. 6:7-11.)  Instead, Defendant Dr. Friedman believed

Plaintiff was somatizing. (Def.'s Statement of Undisputed Facts Ex. C 83.)

42. On May 30, 2002, Plaintiff was taking Neurontin, Elavil and Prozac. (Def.'s Statement of Undisputed Facts Ex. C 83.)

43. Defendant Dr. Friedman recommended eliminating Darvocet and Neurontin. (Def.'s Statement of Undisputed Facts Ex. C 83-85; Compl. 6:7-11.)

44. Dr. Friedman discontinued Plaintiff's Darvocet and Neurontin, because he did not want him to become addicted to these medications. (Def.'s Statement of Undisputed Facts Ex. C 83-85; Pl.'s Dep. 67:4-5.)

45. Dr. Friedman recommended continuing the prescription for Elavil and teaching Plaintiff pain management skills, such as meditation and self-hypnosis, for his pain. (Def.'s Statement of Undisputed Facts Ex. C 83-85; Compl. 6:12-15.)

46. Defendant Dr. Friedman also ordered intensive psychotherapy and continued Prozac. (Def.'s Statement of Undisputed Facts Ex. C 83-85.)

47. On July 16, 2002, Plaintiff was examined by Defendant Dr. Friedman.  (Def.'s Statement of Undisputed Facts Ex. C 89.)  Plaintiff reported that he was sleeping better and experiencing increased strength in the upper left extremity.  (Id.)

48. On September 10, 2002, Plaintiff reported to Defendant Dr. Bhatt with a swollen and painful left hand.  (Def.'s Statement of Undisputed Facts Ex. C 93; Compl. 6:23-26.) Defendant Dr. Bhatt referred Plaintiff to a pain specialist, Defendant Dr. Friedman. (Def.'s Statement of Undisputed Facts Ex. C 93.)

49. Defendant Dr. Bhatt did not renew Plaintiff's previous prescription for pain medications. (Pl.'s Dep. 68:10-17; Compl. 7:5-6.)

50. On September 24, 2002, Plaintiff indicated that he felt much better, but still experienced attacks of pain.  (Def.'s Statement of Undisputed Facts Ex. C 95.)  Defendant Dr. Bhatt indicated that Plaintiff's symptoms were "getting under control."  (Def.'s Statement of Undisputed Facts Ex. C 95.)

51. On October 1, 2002, Plaintiff was examined in the neurology clinic at CSP for continued

1   burning sensation in his left hand.  (Def.'s Statement of Undisputed Facts Ex. C 94.)

2   While his left hand was swollen, Plaintiff's pulses remained normal.  (Id.)

3   52.   On October 17, 2002, Defendant Dr. Friedman examined Plaintiff.  (Def.'s Statement of

4         Undisputed Facts Ex. C 97-99.)  Defendant Dr. Friedman concluded that he was suffering

5         from a somatization of RSDS.  (Id.)  Defendant Dr. Friedman concluded that, other than

6         the swollen left hand, all of Plaintiff's symptoms were psychological. (Id.)  Accordingly,

7         Defendant Dr. Friedman ordered a psychological examination for Plaintiff and advised

8         him to follow up in two weeks.  (Id.)

9   53.   Defendant Dr. Friedman concluded a ganglion block would only be appropriate after

10        Plaintiff's psychological condition was resolved.  (Id.)

11  54.   Plaintiff was upset by Defendant Dr. Friedman's assessment of his medical condition.

12        (Pl.'s Dep. 88:22-89:11; Def.'s Statement of Undisputed Facts Ex. C 100.)

13  55.   On November 26, 2002, Plaintiff was transferred to Pleasant Valley State Prison (PVSP).

14        (Def.'s Statement of Undisputed Facts Ex. A 4.)

15  56.   Defendants were not involved in Plaintiff's treatment at PVSP.  (Pl.'s Dep. 20:9-24.)

16  57.   Plaintiff's pain began to resolve after approximately a year and a half of treatment.  (Pl.'s

17        Dep. 107:8-25.)  His condition stabilized sometime in 2003.  (Id.)

18  58.   From March 2000 to November 2002, Plaintiff was consistently examined by medical

19        staff at CSP and treated with pain medication. (Pl.'s Dep. 14:5-9)

20  59.   Plaintiff has received at least thirty X-rays during the course of his treatment. (Pl.'s Dep.

21        11:5.)

22  **E. ANALYSIS:**

23        **1. Eighth Amendment Medical claim:**

24        Plaintiff argues that Defendants Dr. Pendleton, Dr. Cornforth, Dr. Pineda, Dr. Friedman,

25  Dr. Bhatt, and Dr. Yee, each denied him adequate medical treatment for his RSDS in violation of

26  his Eighth Amendment rights.

27        A prisoner's claim of inadequate medical care does not constitute cruel and unusual

28  punishment unless the mistreatment rises to the level of "deliberate indifference to serious

1    medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"

2    standard involves both a subjective and objective element.  First, the objective prong requires the

3    alleged deprivation to be "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994),

4    *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Second, the subjective prong requires that the

5    prison official acts with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 837.  This

6    state of mind is more than mere negligence, but less than intentional conduct undertaken for the

7    very purpose of causing harm. Id.  A prison official does not act in a deliberately indifferent

8    manner unless the official "knows of and disregards an excessive risk to an inmate's health or

9    safety. Id.

10       In applying this standard, the Ninth Circuit has held that before it can be said that a

11   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

12   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support a cause

13   of action for an Eighth Amendment constitutional violation." Broughton v. Cutter Laboratories,

14   622 F.2d 458, 460 (9th Cir. 1980), *citing* Estelle, 429 U.S. at 105-06.  "[A] complaint that a

15   physician has been negligent in diagnosing or treating a medical condition does not state a valid

16   claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

17   become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at

18   106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross

19   negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood

20   v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)

21       A difference of opinion between medical professionals concerning the appropriate course

22   of treatment generally does not amount to deliberate indifference to serious medical needs. See

23   Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion

24   amounted to deliberate indifference, the prisoner "must show that the course of treatment the

25   doctors chose was medically unacceptable under the circumstances" and "that they chose this

26   course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v.

27   McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Hamilton v. Endell, 981 F.2d 1062, 1067 (9th

28   Cir. 1992) (stating that prisoner may demonstrate deliberate indifference if prison officials relied

1   on the contrary opinion of a non-treating physician).

2               **a.  Defendant Pendleton**

3        Plaintiff claims that Dr. Pendleton denied his appeal for surgery "as not being medically

4   indicated at the present time" and because it would only provide temporary relief. (Compl. 4:18.)

5   Plaintiff claims that the delay in treatment has lead to an acute case of RSDS that can not now be

6   treated effectively.

7        Defendants claim that Defendant Dr. Pendleton is entitled to summary judgment because

8   Plaintiff's claim is based on Defendant's position as the Chief Medical Officer at Corcoran State

9   Prison and not Defendant Pendleton's personal actions. (Def.'s Mot. for Summ. J. 9.) Even

10  assuming that there was some delay, Plaintiff does not state who was responsible for the delay.

11  Id. Finally, assuming Defendant Pendleton caused the surgical delay, Defendant alleges he is

12  entitled to summary judgment because there was no harm caused by the delay. Id. at 10.

13       The Court will address the issue of supervisory liability in a separate section below.

14  Defendants are correct that there is no allegation in the Complaint that Dr. Pendleton was

15  responsible for the delay.  Plaintiff states that Dr. Pendleton denied his appeal for surgery as

16  unneccessary.  However, this contention constitutes a disagreement with diagnosis. A difference

17  of opinion between the physician and the prisoner concerning the appropriate course of treatment

18  does not amount to deliberate indifference to serious medical needs. See Jackson, 90 F.3d at 332;

19  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981.)

20       Even assuming the Complaint stated a deliberate indifference claim against Defendant

21  Dr. Pendleton, Plaintiff presents  no evidence that the course of treatment ordered by Defendant

22  was medically unacceptable. "A complete failure of proof concerning an essential element of the

23  nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett,

24  477 U.S. 317, 323 (1986).  Accordingly, The Court finds Dr. Pendleton is entitled to summary

25  judgment on the Eighth Amendment claim.

26               **b. Defendant Pineda**

27       Plaintiff claims that Defendant Pineda scolded him for not getting treatment sooner and

28  convinced him to have surgery on his hand by telling him that if he did not have the surgery he

1  could lose it. (Compl. 5.) Plaintiff also claims that Dr. Pineda failed to answer any of his

2  questions. Id.

3  Defendants contend that it is unclear why Plaintiff is suing Defendant Dr. Pineda. (Def.'s

4  Mot. for Summ. J. 10.)   Further, it is undisputed that Plaintiff does not know whether Dr. Pineda

5  caused him any harm (Pl.'s Dep. 43:22-24), and since Dr. Pineda did not work for CDCR he had

6  no control over the date of Plaintiff's surgery. (Def.'s Mot. for Summ. J. 10.)   Defendants also

7  claim that all of the treatment Dr. Pineda provided for Plaintiff's condition, was appropriate. Id.

8  Although Plaintiff claims that Dr. Pineda did not answer any of his questions, he does not

9  allege any facts in the Complaint or present evidence that Dr. Pineda knew of and disregarded a

10  serious risk to Plaintiff's health.   The mere fact that Plaintiff was dissatisfied with the

11  explanation provided alone is insufficient to violate the Eighth Amendment.   As noted above,

12  mere legal conclusions without further specification is insufficient to state a valid claim.

13  Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir.1977).

14  Even assuming the Complaint sufficiently alleged an Eighth Amendment claim against

15  Dr. Pineda, the evidence before the Court shows that Plaintiff was treated for his medical

16  condition on several occasions. (Undisputed Fact # 28, 29, 30, 31, 32, 33, 41, 43.)   Plaintiff also

17  concedes in his deposition that he did not know whether Defendant Pineda caused him any harm.

18  (Pl.'s Dep. 43:22-24.)   In light of the above, the Court finds no disputed issue of fact warranting

19  trial and Defendant Pineda is entitled to summary judgment.

20  **c. Defendant Cornforth**

21  Plaintiff claims that on January 24, 2002, Dr. Cornforth cancelled his second scheduled

22  surgery because he felt Plaintiff's condition had worsened since the first surgery, and the first

23  surgery was probably performed too late. (Compl. at 5:17-25.)

24  _____Defendant's claim that they are unsure why Plaintiff is suing Defendant Dr. Cornforth.

25  (Def.'s Mot. for Summ. J. 10.)  It is undisputed that Plaintiff does not know whether Defendant

26  Cornforth did anything wrong. (Pl. Dep. 48:9.)  Defendants also claim that since Defendant Dr.

27  Cornforth did not work for CDCR, he had no control over the date of Plaintiff's epidural steroid

28  injection (Pl.'s Dep. 47:20-48:5) and therefore, could not have been the cause of the delay of the

initial surgery.

The Complaint does not allege that Dr. Cornforth delayed Plaintiff's initial surgery. Plaintiff's allegation concerns the cancellation of his surgery. However, whether surgery was necessary is a medical diagnosis by Dr. Cornforth. A difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. Jackson v. Mcintosh, 90 F.3d 330, 332 (9th Cir. 1986); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981.) Plaintiff's mere disagreement with Dr. Cornforth's evaluation that it was not medically appropriate to perform the second surgery without more is insufficient to state a deliberate indifference claim. Id.

Assuming that Plaintiff's Complaint did state a deliberate indifference claim against Dr. Cornforth, the Defendant would be entitled to summary judgment based on the evidence before the Court. Plaintiff concedes that he does not believe that Dr. Cornforth did anything wrong. (Pl. Dep. 48:9.) In addition, there is no evidence that other than the fact that Dr. Cornforth cancelled Plaintiff's surgery that he had the occasion to later examine Plaintiff nor is there any evidence in the record that Dr. Cornforth knew of and disregarded a risk to Plaintiff's health. The cancellation of the surgery was based on his diagnosis that it was unnecessary. Based on the above, The Court finds that Defendant Cornforth is entitled to summary judgment.

### d. Defendant Friedman

Plaintiff claims that numerous scheduled appointments were cancelled by Defendant Dr. Friedman. (Pl. Compl. at 6:5.) Plaintiff also claims that Defendant Friedman said Plaintiff was misdiagnosed by all of the other physicians because he did not have RSDS. (Id. at 6:8-11.) Plaintiff also claims that Dr. Friedman suggested Plaintiff control his pain through certain techniques and discontinue his pain medication. (Id. at 6:12-15.) The Complaint states that Plaintiff told Dr. Friedman that he needed a higher dose of pain medication because the current dosage was barely working and Plaintiff felt that he could not function without it. (Id. at 6:16-21.) Plaintiff claims that months later his pain medication was discontinued due to Dr. Friedman's orders. (Id. at 6:21-22.)

In the Motion for Summary Judgment, Defendants claim that Plaintiff's disagreement with

17

1  Defendant Dr. Friedman's course of treatment for his condition is insufficient to support an

2  Eighth Amendment medical claim. (Def.'s Mot. for Summ. J. 11.) A difference of opinion

3  between the physician and the prisoner concerning the appropriate course of treatment does not

4  amount to deliberate indifference to serious medical needs.  <u>Jackson v. Mcintosh</u>, 90 F.3d 330,

5  332 (9th Cir. 1986); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981.)

6       The evidence before the Court is insufficient to create a triable issue of fact as to

7  Defendant Friedman.  Plaintiff has not presented evidence that Defendant's cancellation of

8  appointments constituted deliberate indifference.  Further, the mere fact that Dr. Friedman had a

9  different diagnosis of Plaintiff's medical condition does not create a triable issue of fact.  Finally,

10  Plaintiff's complaint that Dr. Friedman did not give him a higher dose or medication or renew his

11  prescription is again a medical diagnosis that does not give rise to an Eighth Amendment

12  violation.  Plaintiff does not allege, let alone present evidence, that the failure to renew his pain

13  medication was medically unacceptable such that it would violate his Constitutional rights.

14  Accordingly, the Court finds Defendant Dr. Friedman is entitled to summary judgment.

15          **e.  Defendant Bhatt**

16       In addition to Plaintiff's supervisory liability claim against Dr. Bhatt, which will be

17  addressed below, Plaintiff alleges Defendant Dr. Bhatt violated his Eighth Amendment right when

18  he failed to renew Plaintiff's pain medication that had been discontinued by Dr. Friedman. (Pl.'s

19  Dep. 68:10-17; Compl. 7:5-6.)

20       Defendants argue that Plaintiff cannot hold Defendant Dr. Bhatt liable for having a

21  disagreement with Defendant Dr. Friedman about Plaintiff's diagnosis.  (Def.'s Mot. for Summ. J.

22  11.)  A difference of opinion between medical professionals concerning the appropriate course of

23  treatment, generally does not amount to deliberate indifference to serious medical needs.  <u>See</u>

24  <u>Sanchez</u>, 891 F.2d at 242.

25       The Complaint also states that Defendant Dr. Bhatt took the time to explain the disease to

26  Plaintiff and referred him to see Dr. Friedman, the pain specialist at the hospital, but that

27  Defendant Dr. Bhatt did not renew Plaintiff's pain medication upon Plaintiff's request for

28  renewal. (Compl. 6:24-28, 7:1-8.) Since a difference of opinion between the physician and the

1  prisoner concerning the appropriate course of treatment does not amount to deliberate indifference

2  to serious medical needs, see <u>Jackson</u>, 90 F.3d at 332; <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344

3  (9th Cir. 1981), Plaintiff's allegation fails to state an Eighth Amendment violation.

4        It is undisputed that Dr. Bhatt did not renew Plaintiff's pain medication (Compl. 7:5-6.),

5  and Plaintiff presents no evidence that Dr. Bhatt knew of and disregarded a serious risk to his

6  health.  "A complete failure of proof concerning an essential element of the nonmoving party's

7  case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

8  (1986).  Accordingly, the Court finds Defendant Bhatt is entitled to summary judgment.

9                    **f. Defendant Dr. Yee**

10        In addition to the supervisory liability claim that will be discussed later, Plaintiff claims

11  that Dr. Yee was made aware of his medical condition and the repeated cancellation of his

12  appointments, through the inmate grievance process. (Compl. 8:2-6.)

13        Defendants state that Defendant Dr. Yee had no involvement in Plaintiff's medical

14  treatment beyond responding to the grievance concerning Plaintiff's failure to attend a medical

15  appointment on October 26, 2000.  (Def.'s Mot. for Summ. J. 11.)  Thus, Defendants claim,

16  because Plaintiff did not provide evidence that Defendant was deliberately indifferent to his

17  medical condition, Defendant Dr. Yee is entitled to summary judgment.  (Def's Mot. for Summ. J.

18  11.)

19        In its Order dismissing the Complaint with leave to amend, the Court concluded that

20  Plaintiff alleged an Eighth Amendment medical claim against Dr. Yee in addition to other named

21  Defendants.  However, upon reviewing the Complaint, it appears that Plaintiff really only alleged

22  a supervisory liability claim against Dr. Yee.  This is made clear in Plaintiff's  Deposition. (Pl.'s

23  Depo. At 72:15-72-3.)  Nonetheless, one could infer an Eighth Amendment claim from the fact

24  that the Complaint states that Defendant Yee was made aware of Plaintiff's medical complaints

25  via the inmate appeals process.  While this might be sufficient to state a prima facie claim for

26  relief warranting service of the Complaint, Plaintiff must present evidence on summary judgment

27  establishing a disputed issue of material fact warranting trial.

28        Here, the record shows that Defendant Yee granted Plaintiff's appeal in part.  The inmate

1   appeal which was denied by Defendant Yee at the Second level begins at the informal level with

2   Plaintiff's complaint that he was not given adequate explanation as to why he was given a

3   diagnosis of RSDS when he only fell down.  Plaintiff requested that it be explained to him how he

4   contracted this disease, how long it was going to last, why he couldn't see Dr. Embree who made

5   the diagnosis, why is his hand swollen and why was his physical therapy cancelled.  (Exh. A,

6   Compl.).  Dr. Hoffman responded to Plaintiff's informal grievance and informed him that Dr.

7   Embree wanted Plaintiff to come see him.  Id.

8          Plaintiff appealed the informal decision to the first level stating that the response was

9   unsatisfactory and that he had not been referred to Dr. Embree. Plaintiff asks that someone tell

10   him the truth about his problem.  Id.  Plaintiff's appeal was granted at the first level by Dr.

11   Thirakomen.  Dr. Thirakomen noted that Plaintiff had been seen several times and that a referral

12   to a neurologist had been scheduled for him.  Id.

13          However, Plaintiff chose to appeal the first level decision to the second level, stating that

14   his questions about his hand had not been answered, it was still swollen and that the yard doctor

15   did could not tell him anything.  Plaintiff's grievance at the second level was granted by Dr. Yee.

16   Dr. Yee's attached letter restates Plaintiff's original request made at the informal level, that he be

17   given information about his disease, how long it would last and that he wanted to see a

18   neurologist. Id.  The letter then states that Plaintiff had been scheduled to see a neurologist on

19   October 26, 2000, but that he refused the appointment.  Dr. Yee then indicated in the appeal that

20   he had rescheduled the appoint for Plaintiff.  Id.  Plaintiff, again dissatisfied with the result,

21   appealed to the next level stating that he had "never refused treatment for this disease" and that he

22   wanted to see a specialist.  Id.

23          Defendants also provide the Court with testimonial evidence wherein Plaintiff states that

24   the only reason he included Defendant Yee in this action was because he was the Chief Medical

25   Officer at the time.  (Pl.'s Depo.at 772:15-73-3.)

26          As noted throughout these Findings, Plaintiff did not file an Opposition to the Motion for

27   Summary Judgment. The Court has painstakingly combed the attachments to the Complaint and

28   the other evidence provided by Defendants in order to resolve whether there exists a disputed

issue of material fact as to the Eighth Amendment claim against Defendant Yee.  As noted above, to succeed on an Eighth Amendment claim, Plaintiff must show that the Defendant knew of and disregarded a serious risk to his health.  Here, however, the evidence before the Court shows only that Plaintiff was dissatisfied with the lack of explanation as to how he had contracted this disease and that he had made a request to see a specialist.  Dr. Yee's only connection with Plaintiff was via the inmate process wherein he responded to Plaintiff's grievance by informing him that he had rescheduled his appointment with a neurologist.  There is no evidence before the Court to establish a disputed issue fact that Defendant Yee's action constituted deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment.  On the contrary, the evidence before the Court establishes that Plaintiff was dissatisfied with the lack of explanation concerning his condition and how it was contracted.  Accordingly, the Court finds that Defendant Yee is entitled to summary judgment.

**2. Supervisory Liability**

Plaintiff's Complaint alleges that Dr. Yee, Dr. Pendleton, and Dr. Bhatt "failed to adequately supervise and train staff and put into place procedures so that Plaintiff would receive medically appropriate care." (Compl. 8:5-21.)

Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441. A supervisory official may be liable under 42 U.S.C § 1983 only if he was personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the superiors's wrongful conduct and the violation. Henry v. Sanchez, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996).  To be successful on a supervisory liability claim, Plaintiff must give evidence that supervisory Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff does not allege sufficient facts indicating that the Defendants personally

1 participated in the alleged deprivation, knew of and failed to prevent the violation or implemented

2 a policy so deficient that the policy itself is a repudiation of his constitutional rights.  Mere legal

3 conclusions without further specification is insufficient to state a valid claim.  Sherman v. Yakahi,

4 549 F.2d 1287, 1290 (9th Cir.1977).  The Court has examined the evidence before it and can find

5 none that would establish a triable issue of fact warranting trial on the supervisory liability claim

6 against any of the Defendants. See, Van Schaack v. Phipps, 38 Colo.App. 140, 558 P.2d 581, 585

7 (Colo.App.1976) (*citations omitted*) "[a] judgment of dismissal for failure to state a claim upon

8 which relief can be granted may be entered upon a motion for summary judgment").  Accordingly,

9 Defendants are entitled to summary judgment on this claim.

10        **3. Qualified Immunity**

11        In light of the above findings that Defendants are entitled to summary judgment on the

12 Eighth Amendment claim and the recommended dismissal of the Supervisory liability claims, the

13 Court declines to address the issue of qualified immunity.

14        **4. American with Disabilities Act and Rehabilitation Act:**

15        Plaintiff also claims that Defendants Dr. Pendleton, Dr. Cornforth, Dr. Pineda,

16 Dr. Friedman, Dr. Bhatt, and Dr. Yee's conduct caused him to have an acute case of RSDS, which

17 resulted in his denial of access to prison programs, services, and activities in violation of the

18 Americans with Disabilities Act (§ 504). (Compl. 13:1-11.)

19        Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act

20 (RA) "both prohibit discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039,

21 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability

22 shall, by reason of such disability, be excluded from participation in or be denied the benefits of

23 the services, programs, or activities of a public entity, or be subject to discrimination

24 by such entity." 42 U.S.C. § 12132.  Section 504 of the RA provides that "no otherwise qualified

25 individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

26 'the participation in, be denied the benefits of, or be subjected to discrimination under any

27 program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794.  Title II of the

28 ADA and the RA apply to inmates within state prisons.  Pennsylvania Dept. of Corrections v.

Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th

1  Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

2          "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

3  qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

4  discriminated against with regard to a public entity's services, programs, or activities; and (3)

5  such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

6  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped

7  within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3)

8  [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program

9  providing the benefit or services receives federal financial assistance." Id.

10          Defendants correctly argue that because Plaintiff only names individual Defendants in his

11  Complaint and not a public entity, he cannot support a claim under the ADA.  (Def's Mot. for

12  Summ. J. 12-13.)  Neither the ADA or RA provide for liability against Defendants sued in their

13  individual capacity.  See Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002); Alsbrook v.

14  City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc); Miranda B. v. Kitzhabor, 328

15  F.3d 1181, 1188 (9th Cir. Or. 2003.)

16          Even had Plaintiff named an appropriate entity, Defendants argue that the claim is

17  defective because Plaintiff fails to allege any facts showing Defendant's denied him any benefits

18  or discriminated against him "solely by reason" of a disability. (Def's Mot. for Summ. J. 13:22-

19  23.)

20          Plaintiff states that "by denying Plaintiff medical care Plaintiff was not able to participate

21  and therefore denied meaningful access to programs, services and activities..." (Compl. at 12:7-

22  10.)  Plaintiff's contention is that he was physically unable to participate in the activities due to

23  his disability.  Other than the conclusory statement by Plaintiff that he has been "excluded from

24  education, vocation, work credit, recreation, dining hall and other meals, yard time, visiting,

25  telephone, classification, transfer, emergency and other programs and services...", he presents no

26  facts or evidence demonstrating how he was excluded from participation in the public entities

27  services, programs or activities on the basis of his disability.  The Court finds no genuine issue of

28  material fact warranting trial and the Defendants are entitled to summary judgment.

**F. CONCLUSION**:

1    The Court RECOMMENDS that the Motion for Summary Judgment be GRANTED and
2    that the action be DISMISSED.

3    The Court further ORDERS that these Findings and Recommendations be submitted to the
4    United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C.
5    § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District
6    Court, Eastern District of California.  Within **THIRTY (30) DAYS** after being served with a copy
7    of these Findings and Recommendations, any party may file written Objections with the Court and
8    serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate
9    Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed
10   within **TEN (10)** court days (plus three days if served by mail) after service of the Objections.
11   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).
12   The parties are advised that failure to file Objections within the specified time may waive the right
13   to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14
15   IT IS SO ORDERED.

16   **Dated:      December 19, 2006                /s/ Sandra M. Snyder**
     icido3                                  UNITED STATES MAGISTRATE JUDGE